IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-21006
_____


ALBERT GREEN; YOLANDA GREEN; SHIRLEY GREEN;
HOWARD CHARLES GREEN; DONNIE GREEN;
RONNIE GREEN; FANNIE MAE GREEN;
CHARLENE THOMAS; PRISCILLA BROWN;
JOYCE ROBINSON; CONNIE GREEN; CAROLYN GREEN;
CLARK GREEN, Individually, and as Heirs of the Estate of
Howard Green, Deceased,

                              Plaintiffs - Appellants,

                    versus

R. J. REYNOLDS TOBACCO COMPANY, Etc.; ET AL.

                              Defendants,

R. J. REYNOLDS TOBACCO COMPANY, a New Jersey Corporation;
PHILIP MORRIS INC., a Virginia Corporation;
BROWN & WILLIAMSON TOBACCO CORPORATION,
a Delaware Corporation; B&W (JAPAN) INC., a Corporation;
HEB BUTT GROCERY CO., a Texas Corporation,

                              Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____
December 6, 2001

Before JOLLY, SMITH and WIENER, Circuit Judges.

PER CURIAM:

     The heirs of Howard Green sued several tobacco manufacturers

and H.E.B. Butt Grocery Company ("H.E.B.") in Texas state court for

Green's wrongful death.  The defendants removed the case to federal court, which remanded.  The defendants removed a second time, citing new evidence and a decision in an unrelated case, and the Greens sought remand.  The district court denied the motion to remand, granted judgment on the pleadings for the defendants, and dismissed the suit.  The Greens now appeal the refusal to remand, contending that the second removal was procedurally improper. Finding no error, we affirm.

I

After smoking a variety of cigarettes for nearly forty-nine years, Green died in 1997 of cardiac arrest and chronic obstructive pulmonary disease.  A year later, his heirs (the "Greens") filed suit in state court against Philip Morris, Inc., R.J. Reynolds Tobacco Company, Brown & Williamson Tobacco Corporation, and H.E.B., asserting various state law theories of recovery related to the dangerous and addictive nature of cigarettes and the cigarette manufacturers' failure to warn of that danger.[1]  The complaint asserted only one specific allegation against H.E.B., that "Plaintiff [Green] purchased cigarettes from an HEB Grocery near his residence."

The first removal asserted diversity jurisdiction under 28 U.S.C. § 1332.  The Greens' motion to remand was based on the

_____

[1]  The plaintiffs alleged strict liability, breach of implied warranty of fitness and merchantability, negligence, gross negligence, res ipsa loquitur, fraud, fraudulent concealment, and negligent misrepresentation.

2

contention that the joinder of H.E.B., a corporation with Texas citizenship, destroyed complete diversity. In response, the defendants argued that the plaintiffs fraudulently had joined H.E.B. to defeat diversity jurisdiction, for there were no claims plaintiffs could raise against H.E.B. in state court. The defendants contended that the Texas Products Liability Act, Tex. Civ. Prac. & Rem. Code § 82.004 (1997), precludes all claims raised against H.E.B.; alternatively, defendants reasoned that the Federal Cigarette Labeling and Advertising Act, as amended by the Public Health Cigarette Smoking Act of 1969, 15 U.S.C. §§ 1331-1334 (the "Labeling Act"), preempts all state law claims against H.E.B.

The district court granted the motion to remand and, relying on American Tobacco Co. v. Grinnell, 951 S.W.2d 420 (Tex. 1997), held that § 82.004 does not bar all of the Greens' state law claims against H.E.B. The court also found that the defendants had failed to prove that Green did not buy any cigarettes at H.E.B. before 1969, the point at which the Labeling Act first could have preempted state law.

Shortly after the remand, this court decided Sanchez v. Liggett & Myers, Inc., in which R.J. Reynolds, Philip Morris, and Brown & Williamson were also defendants. 187 F.3d 486 (5th Cir. 1999). This court held that § 82.004 abrogated American Tobacco and that the Labeling Act does preempt almost all claims against tobacco manufacturers. Id. at 490-91. In addition, the defendants

3

produced a report from the Texas Department of Public Safety ("DPS") stating that Green lived in Houston until his death in 1997, and they proffered an affidavit from an H.E.B. employee testifying that H.E.B. had no Houston locations until 1988. Defendants argued that, at most, H.E.B. could be liable for the last nine years of Green's smoking, and, standing alone, this nine year period was not sufficient to cause his death. The defendants removed the case a second time, citing the new evidence and the Sanchez opinion.

The Greens again moved for remand, this time arguing that the second removal was improper under 28 U.S.C. § 1447(d), which, for the most part, prohibits appeals of remand orders. The defendants responded that both Fifth Circuit precedent and 28 U.S.C. § 1446(b) permitted the court to entertain the second removal petition, so § 1447(d) was not a bar. The plaintiffs argued for the first time in their reply brief, filed more than thirty days after the notice of removal was filed, that the second removal was procedurally improper under 28 U.S.C. § 1446(b), which allows removal petitions to "be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable . . . ." We have construed § 1446(b) to permit second removal petitions. S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir.

4

1996).

The district court referred the case to a magistrate judge ("MJ"), who found that either the Sanchez opinion or the combination of the H.E.B. affidavit and the DPS report provided sufficient ground for removal under § 1446(b). The MJ also found that under Sanchez, § 82.004 bars each of the Greens' state law claims against H.E.B. (and the other defendants), that the new evidence establishes that any state law claim for misrepresentation or fraudulent concealment the Greens may have had against H.E.B. arose after 1969 and therefore was precluded by the Labeling Act, and that even under American Tobacco, the Greens had failed to state a viable claim against H.E.B.

On those alternative bases, the MJ recommended the district court deny the motion to remand and grant judgment on the pleadings to the defendants. The district court adopted the MJ's recommendation. The Greens appeal the denial of the motion to remand.

II

A

The Greens argue that the second removal was improper because the defendants did not satisfy § 1446(b)'s requirements for the filing of second removal petitions. We review the denial of a motion to remand de novo. S.W.S. Erectors, 72 F.3d at 492. Section 1446(b) states,

> If the case stated by the initial pleading
> is not removable, a notice of removal may be

5

> filed within thirty days after receipt by
> the defendant, through service or otherwise,
> of a copy of an amended pleading, motion,
> order or other paper from which it may
> first be ascertained that the case is one
> which is or has become removable . . . .

The district court held that our ruling in <u>Sanchez</u> permitted the second removal petition. The question whether a decision in an unrelated case can serve as the basis for removal under § 1446(b) is <u>res nova</u> in this circuit.

Most other courts to address the issue have found court decisions in unrelated cases not to constitute "orders" or "other papers" under § 1446(b) and not to be grounds for removal. <u>See, e.g.</u>, <u>Morsani v. Major League Baseball</u>, 79 F. Supp. 2d 1331, 1333-34 (M.D. Fl. 1999) (decision in an unrelated case is not an "order or other paper" under § 1446(b); "plain language of the statute . . . implies the occurrence of an event within the proceeding itself"); <u>Metropolitan Dade County v. TCI TKR of South Florida</u>, 936 F. Supp. 958, 959 (S.D. Fl. 1996) (Federal Communications Commission opinion not "other paper" under § 1446(b)); <u>Lozano v. GPE Controls</u>, 859 F. Supp. 1036, 1038 (S.D. Tex. 1994) (judicial opinion in an unrelated case is not "other paper" under § 1446(b)); <u>Kocaj v. Chrysler Corp</u>., 794 F. Supp 234, 236 (E.D. Mich. 1992) (opinion in unrelated case is not "other paper" under § 1446(b); "[statutory] language plainly refers to items served or otherwise given to a defendant in a state court case"); <u>Holiday v. Travelers Ins. Co.</u>, 666 F. Supp. 1286, 1289 (W.D. Ark. 1987) (recent Supreme

6

Court decisions not "other paper" under § 1446(b)); Hollenbeck v. Burroughs Corp., 664 F. Supp. 280, 281 (E.D. Mich. 1987) (decision in unrelated case is not other paper under § 1446(b), as the "other paper" language focuses on voluntary actions of the plaintiff, not factors beyond the plaintiff's control); Johansen v. Employee Benefit Claims, Inc., 668 F. Supp. 1294, 1296-97 (D. Minn. 1987) (based on the statutory language, "other paper" should be interpreted to refer to documents generated within the state court litigation, and not an extraneous decision in another case); Gruner v. Blakeman, 517 F. Supp. 357, 360-61 (D. Conn. 1981) (subsequent decision in a related case did not constitute "order or other paper"); Wright, Miller and Cooper, 14C Federal Practice and Procedure § 3732, p. 310 (West 1998) ("the publication of opinions by other courts dealing with subjects that potentially could affect a state court suit's removability or documents not generated as a result of state court litigation are not recognized as 'other paper' sources for purposes of starting a new thirty-day period under Section 1446(b)"). Only two district courts appear to have stated otherwise. See Davis v. Time Insurance Co., 698 F. Supp. 1317, 1321 (S.D. Miss. 1988) (suggesting that where a new Supreme Court decision indicates that a case is subject to federal preemption, this changes the character of the litigation so as to make it a new suit which is removable to federal court); Smith v. Burroughs Corp., 670 F. Supp. 740, 741 (E.D. Mich. 1987) (a

defendant can remove a case under § 1446(b) based on a decision in an unrelated case; however, a subsequent Eastern District of Michigan opinion has found that an unrelated court decision is not within the ambit of § 1446(b), see Kocaj, supra).

The Third Circuit, however, has held that in very limited circumstances, similar to those here--a decision by a court in an unrelated case, but which involves the same defendant, a similar factual situation, and the question of removal--can constitute an "order" under § 1446(b). Doe v. American Red Cross, 14 F.3d 196 (3d Cir. 1993). In Doe, a number of state court suits were filed against the American Red Cross. The Red Cross removed the cases to federal court on the ground that its charter conferred federal jurisdiction over suits against it; however, the district court disagreed and remanded the cases to state court. While these cases were pending, the Supreme Court decided another case involving the Red Cross, American National Red Cross v. S.G., 505 U.S. 247 (1992). In S.G. the Supreme Court held that the "sue and be sued" provision of the Red Cross's charter did in fact confer original federal jurisdiction over suits against it. Id. at 257. Within thirty days of the S.G. decision, the Red Cross again removed the cases in Doe under § 1446(b). The Third Circuit held "that because the [Red Cross] was the critical party in American National Red Cross v. S.G. and 'filed a notice of removal within thirty days' after receiving an order of the Court implementing its decision, it

8

was authorized under the statute to file for re-removal, even though its first removal had been previously remanded in proceedings that antedated the Court's decision in S.G." Doe, 14 F.3d at 198. The court held that the S.G. opinion qualified as an "order" under § 1446(b). However, the court explicitly limited its holding to the situation where the same party was a defendant in both cases, involving similar factual situations, and the order expressly authorized removal. Further, the court explicitly declined to decide whether the S.G. opinion constituted "other paper" under § 1446(b). Id. at 202-03.

Similarly, here the defendants R.J. Reynolds, Brown and Williamson, and Philip Morris were all defendants in the Sanchez case, which involved a similar factual situation and legal conclusion (that Tex. Civ. Prac. & Rem. Code § 82.004 bars most products liability actions against manufacturers or sellers of cigarettes). Although Sanchez did not explicitly discuss removal, the effect of the decision in Sanchez has a similar effect on our case as the S.G. decision had on American Red Cross, i.e. that these defendants cannot be sued under Texas law. The similarities between this case and Sanchez bring this case within the limited parameters of American Red Cross. We therefore hold that the Sanchez opinion, under these very narrow circumstances, was an "order" for purposes of § 1446(b) removal in this case involving the same defendants, and a similar factual situation and legal

9

issue.  Accordingly, the district court did not err in entertaining the second removal petition.[2]

B

The Greens additionally argue that the district court erred when it concluded that the Greens' petition failed to state a claim.[3]  The district court noted that in <u>Sanchez</u>, we held that § 82.004 precludes all state law claims against tobacco manufacturers excepting manufacturing defect and express warranty claims.  Deciding that the Greens had failed to state a claim for either manufacturing defect or breach of express warranty, the court denied the motion to remand and dismissed.

The Greens contend, to the contrary, that their original petition does allege three manufacturing defect claims, specifically that "the cigarettes were in a defective condition unreasonably dangerous to a user or consumer . . . (c) in containing additives that were carcinogenic; (d) in containing additives that

---

[2]  The district court also held that the defendants' new evidence, the DPS report and H.E.B. employee affidavit, constituted "other paper" supporting the second removal petition under § 1446(b).  Because <u>Sanchez</u> constitutes sufficient grounds for affirming, we need not decide whether these documents satisfy § 1446(b).  Additionally, the defendants argue that because the Greens failed to raise their § 1446(b) objection within thirty days of removal, they have waived the objection under 28 U.S.C. § 1447(c).  However, because we decide that removal was proper, we need not address this issue.

[3]  In this case, the jurisdictional question is inseparable from the merits.  The federal courts have jurisdiction if H.E.B. is not a proper defendant.  If the Greens failed to state a claim against H.E.B., removal was appropriate.  If the Greens stated a claim against H.E.B., removal was improper.

10

were addictive," and in containing "pesticide residue." The Greens' contention is without merit.

Texas law characterizes claims related to the addictive or carcinogenic nature of cigarettes as design defect claims, not manufacturing defect claims. In <u>Ford Motor Co. v. Pool</u>, 688 S.W.2d 879, 881 (Tex. App.SSTexarkana 1985), <u>rev'd in part on other grounds</u>, 715 S.W.2d 629 (Tex. 1986), the court distinguished the two theories of recovery:

> Manufacturing defect cases involve products which are flawed, i.e., which do not conform to the manufacturer's own specifications, and are not identical to their mass-produced siblings. The flaw theory is based upon a fundamental consumer expectancy: that a mass-produced product will not differ from its siblings in a manner that makes it more dangerous than the others. Defective design cases, however, are not based on consumer expectancy, but on the manufacturer's design of a product which makes it unreasonably dangerous, even though not flawed in its manufacture.

The plaintiffs argue that cigarettes are, in general, addictive and carcinogenic, not that the particular cigarettes Green purchased were more dangerous, or more carcinogenic and addictive, than are typical cigarettes. Accordingly, the district court was correct in characterizing these claims as design defect claims preempted by § 82.004.

The Greens fail to express essential elements of their claim that the presence of pesticide residue in defendants' cigarettes constitutes a manufacturing defect. The Greens' brief states only

11

that "Plaintiff alleges at least the following claims in her original petition . . . Manufacturing defect in containing impurities, including pesticide residue." The Greens have not stated, either in their brief or in their second amended complaint (the first document in which they even pleaded the pesticide residue claim), that defendants' cigarettes differed from other brands or that the particular cigarettes Green smoked deviated from the defendants' design specifications.

Plaintiffs have asserted only that the defendants' cigarettes contain pesticide residue and that such residue is harmful. These allegations are, at most, design defect claims, which are preempted by § 82.004.[4]

### III

Based on the foregoing, we AFFIRM the district court's finding that removal was proper, and we AFFIRM the district court's dismissal of the Greens' claims.

AFFIRMED.

---

[4] Because we conclude that Tex. Civ. Prac. & Rem. Code § 82.004 preempts all of the Greens' claims against H.E.B., we do not address the issue of federal preemption under the Labeling Act.